# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

_____

MGF SOURCING US, LLC,

               Plaintiff,

v.

LA SENZA INTERNATIONAL, LLC, LA
SENZA INTERNATIONAL CANADA, LLC,
AND LA SENZA CANADA, INC.

               Defendants.

_____

Index No.: 657213/2019 (Friedman, J.)


## VERIFIED ANSWER TO VERIFIED COMPLAINT AND AMENDED COUNTERCLAIMS OF DEFENDANTS LA SENZA INTERNATIONAL, LLC, LA SENZA INTERNATIONAL CANADA, LLC, AND LA SENZA CANADA, INC.

Defendants La Senza International, LLC, La Senza International Canada, LLC, and La Senza Canada, Inc. ("La Senza" or Defendants"), by and through their undersigned counsel, for their Verified Answer to the Verified Complaint ("Complaint") of Plaintiff MGF Sourcing US, LLC ("Plaintiff"), state as follows:

## INTRODUCTION

This commercial dispute arises out of a product sourcing agreement between MGF (the sourcing agent) and La Senza (a retailer). The parties were introduced to each other by L Brands, Inc. (the large publicly-traded retailer and former owner of both La Senza and MGF) as L Brands sought to divest the financially struggling predecessor to La Senza. Recognizing that, to make a transaction possible, an acquiror of La Senza would require product sourcing capabilities (which, at the time of the transaction, were not resident in La Senza's management), L Brands promoted – and MGF willingly and aggressively sought – awarding MGF the opportunity to serve as La Senza's new sourcing agent.

A-00001

At the time, all parties were well aware that key components of La Senza's financial and operational turnaround plan – the so called "Path to Profitability" that L Brands advertised as part of its due diligence materials – depended directly on MGF's competent performance of the sourcing services contemplated in the parties' sourcing agreement.  Under the sourcing agreement, MGF promised to manage sources of product for La Senza after it transitioned to new ownership. Although MGF had touted its network with overseas suppliers (most of which were long-time suppliers to La Senza under L Brands' ownership), MGF's performance has left much to be desired.  MGF breached the sourcing agreement, for which La Senza seeks redress in their counterclaims.  MGF then compounded its harm to La Senza by trying to force a liquidation of La Senza through a multi-pronged assault, including by interfering with La Senza's prospective economic relationships with the long-time suppliers of La Senza (in violation, among other things, of its obligation to mitigate its own damages), and by filing a second lawsuit against La Senza, in Delaware, demanding the liquidation of La Senza by a receiver. La Senza seeks damages for the losses resulting from these wrongful attacks.

## **NATURE OF ACTION**

1.      La Senza admits that MGF has purported to assert a claim for breach of contract, but denies that MGF's claim has merit. La Senza admits that certain payments putatively owed to MGF under the parties' contracts have not been timely made, but states that MGF's own prior material breaches of the parties' contracts contributed to any such delays, on La Senza's part, in paying MGF and that La Senza may set off its damages from any payments that MGF claims to

Case 20-10155-LSS Doc 50-1 Filed 02/20/20 Page 4 of 35

be owed under the parties' contracts. La Senza further states that it has given MGF assurances of payment, but La Senza denies any remaining allegations in paragraph 1 of the Complaint.[1]

2.      La Senza admits that it entered into the Master Sourcing Agreement ("MSA") with MGF and various contracts under the MSA, with payment terms of Net 60 days. La Senza denies that it has materially breached the MSA and states that to the extent it could be said to have breached the MSA its breaches were occasioned by MGF's prior material breaches. La Senza affirmatively states that it terminated the MSA because of MGF's material breaches of the MSA, denies that it has repudiated the MSA and denies any further allegations in paragraph 2 of the Complaint.

3.      La Senza denies that it obtained any goods from MGF under false pretenses. La Senza denies that it is insolvent and  generally not paying its undisputed obligations as they come due. La Senza denies that it ever ordered goods from MGF without an intent to timely pay for them. La Senza denies that it concealed its financial position from MGF and denies any remaining allegations in paragraph 3 of the Complaint.

4.      La Senza denies that it has committed any misconduct. La Senza denies that MGF has been damaged solely as a result of La Senza's actions and denies any remaining allegations in paragraph 4 of the Complaint.

5.      La Senza admits that on or about November 22, 2019, it received a letter from MGF demanding that it return $2.9 million of goods, and that it did not agree to return any goods to MGF. La Senza admits that MGF seeks the declaration and injunctive relief described in paragraph 5 of the Complaint but denies that MGF is entitled to this relief and denies any remaining allegations in paragraph 5 of the Complaint.

---

[1] The Complaint contains numerous section titles and headings. La Senza does not interpret these to be substantive allegations and, thus, does not answer them.  To the extent they are considered allegations against La Senza, La Senza denies them.

A-00003

## PARTIES

6.      La Senza admits that MGF Sourcing US, LLC is a Delaware limited liability company, that it sources and sells apparel, and that it holds itself out as offering services including research and product development, production and manufacturing management, technical execution, quality assurance, and global logistics services. La Senza is without information sufficient to admit or deny the remaining allegations in paragraph 6 of the Complaint and, therefore, denies the same.

7.      La Senza admits the allegations in paragraph 7 of the Complaint.

8.      La Senza admits the allegations in paragraph 8 of the Complaint.

9.      La Senza admits the allegations in paragraph 9 of the Complaint.

10.     La Senza admits the allegations in paragraph 10 of the Complaint.

## JURISDICTION AND VENUE

11.     La Senza admits the allegations in paragraph 11 of the Complaint as to Defendant La Senza International, LLC and denies the allegations in paragraph 11 of the Complaint as to Defendants La Senza International Canada, LLC and La Senza Canada, Inc.

12.     La Senza admits the allegations in paragraph 12 of the Complaint.

## BACKGROUND

13.     La Senza admits the allegations in paragraph 13 of the Complaint.

14.     La Senza denies that L Brands had a deal with Regent, L.P.; denies that La Senza agreed to guarantee payment to MGF for the goods MGF sourced to La Senza; denies that there were promises and guarantees from La Senza and L Brands that MGF would not be exposed to risk of La Senza defaulting on its payment obligations; and is without information sufficient to

4

A-00004

admit or deny the remaining allegations in paragraph 14 of the Complaint and, therefore, denies the same.

15.    La Senza admits to the existence of the three documents referenced in paragraph 15 of the Complaint but denies any remaining allegations in paragraph 15.

16.    La Senza admits that on or about December 12, 2018, which was the day before L Brands announced its deal with a Regent affiliate, L Brands and MGF executed the document attached to the Complaint as Exhibit 1. La Senza denies that there was a requirement to provide MGF a letter of credit in an amount equal to 50% of La Senza's inventory value to the extent that it mischaracterizes the MSA. Further answering, La Senza states that Exhibit 1 speaks for itself and it denies the allegations in paragraph 16 of the Complaint to the extent they mischaracterize Exhibit 1.

17.    La Senza states that Exhibit 1 to the Complaint speaks for itself and it denies the allegations in paragraph 17 of the Complaint to the extent they mischaracterize Exhibit I.

18.    La Senza admits that MGF and La Senza International, LLC executed the MSA on or about January 5, 2019, which was the day before the La Senza sale closed, and admits that Exhibit 2 to the Complaint is a true and correct copy of the MSA. Further answering, La Senza states that the MSA speaks for itself, and it denies the allegations in paragraph 18 to the extent they mischaracterize the MSA. La Senza further admits that Exhibits 7 and 8 of the Complaint appear to be proposed purchase orders, but it lacks information sufficient to admit or deny that purchase orders in these forms were  in every instance used, agreed upon or accepted and, therefore, denies the same. Further answering, Exhibits 7 and 8 speak for themselves, and La Senza denies the allegations in paragraph 18 of the Complaint to the extent they mischaracterize Exhibits 7 and 8. La Senza denies any remaining allegations in paragraph 18 of the Complaint.

5

A-00005

19.     La Senza states that the MSA speaks for itself, and it denies the allegations in paragraph 19 of the Complaint to the extent they mischaracterize the MSA.

20.     La Senza lacks sufficient information to admit or deny that only after drawing under the Letter of Credit would MGF be entitled to exercise its rights under the L Brands Guarantee. La Senza further states that the MSA speaks for itself, and it denies the allegations in paragraph 20 of the Complaint to the extent they mischaracterize the MSA.

21.     La Senza states that the MSA speaks for itself, and it denies the allegations in paragraph 21 of the Complaint to the extent they mischaracterize the MSA.

22.     La Senza admits that on or about January 4, 2019, L Brands and MGF executed the document attached to the Complaint as Exhibit 3. Further answering, La Senza states that Exhibit 3 speaks for itself and it denies the allegations in paragraph 22 of the Complaint to the extent they mischaracterize Exhibit 3.

23.     La Senza admits that in or around April 2019, it directly communicated to MGF that it was having difficulty obtaining the letter of credit referenced in the MSA, and further admits that La Senza negotiated with MGF to find alternative solutions that would be suitable for both parties. La Senza is without information sufficient to admit or deny the allegation that MGF negotiated in good faith. La Senza denies any remaining allegations in paragraph 23.

24.     La Senza admits that on or about April 15, 2019, La Senza International, LLC and MGF executed Amendment No. 1 to the MSA and that Exhibit 4 to the Complaint is an accurate copy of Amendment No. 1. Further answering, La Senza states that Amendment No. 1 speaks for itself, and it denies the allegations in paragraph 24 of the Complaint to the extent they mischaracterize Amendment No. 1.

25.     La Senza admits that MGF accepted orders from and shipped orders to La Senza after Amendment No. 1 was executed on April 15, 2019. La Senza admits that on or about May 30, 2019, La Senza International, LLC and MGF entered into Amendment No. 2 to the MSA and that Exhibit 9 to the Complaint is an accurate copy of Amendment No. 2. Further answering, La Senza states that Amendment No. 2 speaks for itself, and it denies the allegations in paragraph 25 of the Complaint to the extent they mischaracterize Amendment No. 2. Further, La Senza admits that it did not fund the Escrow Account with $5 million by June 17, 2019, and that at that time La Senza was not delinquent in any payments to MGF or other obligations under the MSA. La Senza denies any additional allegations in paragraph 25 of the Complaint.

26.     La Senza admits that by September 30, 2019, it had not funded the original $5 million payment to the Escrow Account or a second $5 million payment to the Escrow Account. La Senza admits that as of September 30, 2019, it had not delivered a letter of credit to MGF. La Senza admits that as of September 30, 2019, it was not substantially delinquent in making payments to MGF for goods shipped. La Senza denies any remaining allegations in paragraph 26 of the Complaint.

27.     La Senza admits that on October 5, 2019 it did not make a then-due payment to MGF for certain goods, but denies the remaining allegations in paragraph 27 of the Complaint to the extent that they mischaracterize the amounts due as of the referenced dates. La Senza denies any remaining allegations in paragraph 27 of the Complaint.

28.     La Senza denies that any of its actions gave MGF commercially reasonable grounds for insecurity under the MSA. La Senza admits that on or about October 31, 2019, MGF sent it the letter attached to the Complaint as Exhibit 5. Further answering, La Senza states that

A-00007

Exhibit 5 speaks for itself and it denies the allegations in paragraph 28 to the extent they mischaracterize Exhibit 5 and any remaining allegations in paragraph 28 of the Complaint.

29.     La Senza denies that it materially breached the MSA or any other contract to the extent that MGF's breach of the MSA directly contributed to La Senza's inability satisfy its obligations putatively due to MGF. La Senza admits that in and after October 2019 it negotiated with MGF in good faith to resolve the parties' disputes under the MSA and fashion a workable ongoing relationship. La Senza denies that it has ever lacked the intention to perform the MSA or to pay MGF what it was due under the MSA or otherwise. La Senza denies that as of the filing of the Complaint it had not made payments to MGF on approximately $12.25 million of goods to the extent that this mischaracterizes amounts then putatively due to MGF. La Senza denies that it is unable or unwilling to pay its undisputed debts as they come due. La Senza denies that it ignored the letter contained in Exhibit 5 to the Complaint. La Senza admits that it refused to provide MGF with a specific representation requested by MGF that La Senza is solvent and denies any remaining allegations in paragraph 29 of the Complaint.

30.     La Senza denies that it has materially breached the MSA or refused to cure any breaches of the MSA to the extent that MGF's breach of the MSA directly contributed to La Senza's inability satisfy its obligations putatively due to MGF. La Senza admits that it refused to provide MGF with a specific representation requested by MGF that La Senza is solvent. La Senza denies that it has failed to provide MGF with adequate assurances. La Senza denies that it is insolvent and generally unable to pay its undisputed debts as they come due. La Senza admits that on or about November 22, 2019, MGF transmitted to it the letter attached to the Complaint as Exhibit 6. Further answering, MGF states that Exhibit 6 speaks for itself, and it denies the

allegations in paragraph 30 of the Complaint to the extent they mischaracterize Exhibit 6. La Senza denies any additional allegations in paragraph 30 of the Complaint.

31.     La Senza admits that it did not comply with MGF's Reclamation Demand but denies that the Reclamation Demand was proper and denies that it had any obligation to comply with the Reclamation Demand. Further answering, La Senza states that after the filing of the Complaint it reached a settlement with MGF with respect to its Reclamation Demand and made a cash payment to MGF to resolve the Reclamation Demand. La Senza denies the remaining allegations in paragraph 31 of the Complaint.

## COUNT I: BREACH OF CONTRACT

32.     La Senza repeats and realleges its answers to paragraphs 1–31 of the Complaint as though fully set forth herein.

33.     La Senza admits that it entered into the MSA and that, subject to La Senza's termination of the MSA because of MGF's material breaches of the MSA, the MSA is a valid and binding agreement. La Senza further admits that it entered into certain additional contracts under the MSA. La Senza denies any additional allegations in paragraph 33 of the Complaint.

34.     La Senza denies the allegations in paragraph 34 of the Complaint. Further answering, La Senza states that MGF failed to perform under the MSA in numerous material ways. For example, MGF lacked an adequate number of employees with the necessary skill and experience to successfully source products to La Senza. MGF also breached its promises to develop alternative costing opportunities and to evaluate La Senza's staffing structure. Indeed, La Senza's product costs actually *increased* causing La Senza to suffer significantly higher than expected cost of sales and reduced operating income.

A-00009

35.    La Senza denies the allegations in paragraph 35 of the Complaint to the extent that MGF's breach of the MSA directly contributed to La Senza's inability satisfy its obligations putatively due to MGF.

36.    La Senza admits that did not make certain payments owed under the MSA but states that, to the extent it could be said to have breached the MSA, MGF's prior material breaches of the MSA contributed to or caused such breaches. La Senza denies any additional allegations in paragraph 36 of the Complaint.

37.    La Senza states that the MSA, as amended, speaks for itself and it denies the allegations in paragraph 37 of the Complaint to the extent they mischaracterize the MSA, as amended.

38.    La Senza admits that it did not fund the Escrow Account referenced in the MSA, but states that, to the extent it could be said to have breached the MSA, MGF's prior material breaches of the MSA contributed to or caused such breaches. La Senza denies any additional allegations in paragraph 36 of the Complaint.

39.    La Senza denies the allegations in paragraph 39 of the Complaint.

40.    La Senza admits that MGF sent it the letter attached to the Complaint as Exhibit 5 on or about October 31, 2019. Further answering, La Senza states that Exhibit 5 speaks for itself and denies the allegations in paragraph 40 of the Complaint to the extent they mischaracterize Exhibit 5. La Senza denies any remaining allegations in paragraph 40 of the Complaint.

41.    La Senza denies the allegations in paragraph 41 of the Complaint.

42.    La Senza denies the allegations in paragraph 42 of the Complaint.

A-00010

## COUNT II: RECLAMATION

The parties have settled Count II and, therefore, no answer is required to the allegations of Count II (paragraphs 43 through 48). To the extent any answer is required, La Senza denies such allegations.

## COUNT III: DECLARATORY RELIEF

49.   La Senza repeats and realleges its answers to paragraphs 1–48 of the Complaint as though fully set forth herein.

50.   La Senza admits that the Court is empowered to enter declaratory judgments pursuant to N.Y.C.P.L.R. 3001 but denies that MGF is entitled to the declaratory judgment it seeks in this litigation.

51.   La Senza denies the allegations in paragraph 51 of the Complaint.

52.   La Senza denies the allegations in paragraph 52 of the Complaint.

53.   La Senza denies the allegations in paragraph 53 of the Complaint.

54.   La Senza denies the allegations in paragraph 54 of the Complaint.

55.   La Senza denies the allegations in paragraph 55 of the Complaint.

## COUNT IV: INJUNCTIVE RELIEF

56.   La Senza repeats and realleges its answers to paragraphs 1–55 of the Complaint as though fully set forth herein.

57.   La Senza denies the allegations in paragraph 57 of the Complaint.

58.   La Senza admits that it did not comply with MGF's Reclamation Demand but denies that the Reclamation Demand was proper or that it had any obligation to comply with it. La Senza denies the remaining allegations in paragraph 58 of the Complaint. Further answering, La Senza states that after the filing of the Complaint it reached a settlement with MGF with

respect to its Reclamation Demand and made a cash payment to MGF to resolve the Reclamation Demand.

59.     La Senza denies the allegations in paragraph 59 of the Complaint.

60.     La Senza denies the allegations in paragraph 60 of the Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

## AFFIRMATIVE DEFENSE I: LACK OF PROXIMATE CAUSE OF DAMAGES

1.     On or about January 5, 2019, La Senza International, LLC and MGF entered into the Master Sourcing Agreement ("MSA"), a valid and enforceable legal contract.

2.     The MSA imposed material obligations on MGF. Section 11(e) of the MSA required MGF to "employ an adequate number of persons to provide the services contemplated [under the MSA]" and MGF further represented and promised in Section 11(e) that those employees would "have the requisite skills and experience to provide such services in a commercially reasonable manner."

3.     In Section 2(a) of the MSA, MGF promised to provide production management services for La Senza. The agreement provided that these services:

> *shall* include evaluating the existing sourcing matrix (factories, mill, trim and other raw material suppliers), developing alternative sourcing considerations, product costing and re-engineering, order management, color and pre-production fit approvals, fabric prepositioning and management, production scheduling and monitoring, factory compliance audits and management, importation, customs clearance and trade management, and delivery services (last mile and warehousing services included.

(emphasis added.)

4.     In Section 2(e) of the MSA, MGF promised to undertake cost reduction measures, and to work to reduce product costing.

Case 20-10155-LSS   Doc 50-1   Filed 02/20/20   Page 14 of 35

5.     MGF failed to perform its obligations under the MSA. For example, MGF failed to employ an adequate number of persons to provide services under the MSA and failed to employ workers with the requisite skill and experience to perform MGF's obligations under the MSA in a commercially reasonable manner, in breach of MSA Section 11(e).

6.     As a result of this breach of the MSA, MGF failed to ship product to La Senza in a timely manner, failed to communicate effectively with La Senza so that La Senza could find solutions to the problems that MGF had caused, and failed to find lower cost suppliers, as contemplated in the MSA.

7.     Likewise, MGF failed to provide all or some of the production management services enumerated in Section 2(a) of the MSA, in breach of Section 2(a).

8.     Further, MGF failed to undertake cost reduction measures as required by Section 2(e) of the MSA, in breach of Section 2(e).

9.     MGF's numerous material breaches of the MSA critically impaired La Senza's cash flow and prevented it from performing its obligations under the MSA or contributed to La Senza's inability to perform them, including by preventing La Senza from making certain payments to MGF under the MSA in a timely manner.

10.     Therefore, the damages MGF claims in the Complaint were caused, in whole or in part, by its own breaches of the MSA, and such damages are not recoverable by MGF.

### AFFIRMATIVE DEFENSE II: PRIOR MATERIAL BREACH

11.     La Senza restates and realleges the allegations in paragraphs 1 through 10 of its affirmative defenses as though fully set forth herein.

12.     As set forth in detail in paragraphs 1 through 11, above, MGF entered into the MSA, a valid and enforceable contract, and then breached the MSA by failing to employ

A-00013

adequate personnel to perform it, failing to provide adequate production management services, and failing to take adequate cost reduction measures.

13.    MGF failed to accept payments or partial payments or failed to replace in process orders.

14.    These failures, on MGF's part, were material breaches of the MSA.

15.    MGF is therefore, by reason of its prior material breaches of the MSA, prohibited from enforcing the MSA against La Senza.

## AFFIRMATIVE DEFENSE III: FAILURE TO MITIGATE DAMAGES

16.    La Senza restates and realleges the allegations in paragraphs 1 through 15 of its affirmative defenses as though fully set forth herein.

17.    As set forth in detail in paragraphs 1 through 16, above, MGF breached the MSA by failing to employ adequate personnel to perform it, failing to provide adequate production management services, and failing to take adequate cost reduction measures.

18.    MGF failed to accept payments or partial payments or failed to replace in process orders.

19.    MGF's breaches of the MSA had a strongly negative impact on La Senza's business performance. As a result of MGF's failure to hire and adequately train its employees, in breach of the MSA, MGF failed to ship product to La Senza during La Senza's peak sales season. This caused untold harm to La Senza's business, as it contributed to or prevented La Senza from stocking its shelves with appropriate products and timely fulfilling customer orders.

20.    As a result of MGF's failure to provide production management services or to take cost reduction measures, in breach of the MSA, La Senza's costs rose, and profits fell.

21.     All of these failures on MGF's part impaired La Senza's ability to make timely payments under the MSA and otherwise to perform the MSA. MGF's claimed damages, which stem from La Senza's alleged failures to perform the MSA, were therefore caused in whole or in part by MGF's own conduct, and MGF has in this way failed to mitigate its damages.

### AFFIRMATIVE DEFENSE IV: SET OFF

22.     La Senza restates and realleges the allegations in paragraphs 1 through 21 of its affirmative defenses as though fully set forth herein.

23.     As set forth in detail in paragraphs 1 through 22, above, MGF entered into the MSA, a valid and enforceable contract, and then breached the MSA by failing to employ adequate personnel to perform it, failing to provide adequate production management services, and failing to take adequate cost reduction measures.

24.     These failures, on MGF's part, were material breaches of the MSA.

25.     As a result of MGF's material breaches of the MSA, La Senza suffered damages.

26.     La Senza is permitted to set off its damages from any amounts that MGF claims to be owed by La Senza.

WHEREFORE, Defendants La Senza International, LLC, La Senza International Canada, LLC, and La Senza Canada, Inc. pray that the Court dismiss the Complaint with prejudice and award their costs expended in defending this litigation, including but not limited to, reasonable attorneys' fees, expert witness fees, investigation costs, discovery costs, court fees, and any other fees and award Defendants any other and further relief this Court deems just and proper.

A-00015

## COUNTERCLAIMS

Independent of the above answer, defendant/counterclaim-plaintiffs, La Senza International, LLC, La Senza International Canada, LLC, and La Senza Canada, Inc. (together, "La Senza"), make and present the following counterclaims against plaintiff/counter-defendant, MGF Sourcing US, LLC ("MGF"), and respectfully show to the Court:

1.      La Senza operates approximately 130 brick-and-mortar retail outlets, with 120 locations in Canada and twelve in the United States' Midwest region. These storefronts sell intimate apparel under the La Senza brand name.

2.      In December 2018, Regent, L.P. ("Regent"), a private equity firm whose affiliates now are the ultimate owner of La Senza, agreed to acquire the La Senza business from L Brands, Inc. ("L Brands").

3.      L Brands is a publicly-traded retail empire (formerly known as Limited Brands) that operates Victoria's Secret, Pink, Bath and Body Works, and other high-profile branded retail concepts.

4.      MGF is a sourcing supplier, which arranges for factories outside the United States to manufacture branded products for retailers.

5.       MGF was also formerly owned by L Brands. In 2015, L Brands divested from MGF, which is now entirely owned by Sycamore Partners. Despite the divesture, L Brands and MGF continue to work closely together.

6.      During the acquisition negotiations, L Brands urged and highly recommended that MGF be used as La Senza's sourcing supplier.  In fact, MGF participated with L Brands in Regent's diligence review of La Senza.

7.      During negotiations for the acquisition of La Senza, all the parties—including MGF—discussed La Senza's distressed financial condition, including that La Senza had generated an EBITDA loss of approximately $30,000,000 in the proceeding twelve months.

8.      As part of the negotiations, L Brands put together a detailed financial turnaround plan, named the "Path to Profitability," which contemplated how La Senza could become profitable within twelve months.

9.      MGF and La Senza further discussed a product sourcing relationship, should Regent acquire La Senza.  MGF indicated that, based on La Senza's historical level of product orders, MGF would likely carry credit exposure of $35 million on average.

10.      For this reason, MGF negotiated "credit protection" from both La Senza and, to enhance its protection, L Brands.  Specifically, L Brands provided a guaranty of La Senza's obligations for up to $20 million of new orders to be placed by La Senza between June 1, 2019, and May 31, 2020.

11.      L Brands insisted on an abbreviated and consequently frenzied due diligence timeline because it would be necessary to sign the purchase agreement by mid-December, 2018, to announce the sale before the holidays and then to close the transaction no later than mid-January, 2019.

12.      L Brands encouraged Regent to pursue the La Senza opportunity by touting the Path to Profitability.

13.      Properly handling the sourcing of a stream of $35 million or more in purchases requires a substantial number of qualified personnel in the countries in which such supplies are procured.

14.     During the expedited due diligence to acquire La Senza, MGF represented that MGF had or would retain the resources to meet these requirements. MGF also represented that it had expertise to assist La Senza in redesigning its sourcing and costing structures for better efficiency, as contemplated by the Path to Profitability.

15.     In the Master Sourcing Agreement ("MSA") between MGF and La Senza, MGF repeated many of these representations about its ability to perform its sourcing obligations. For instance, MGF promised to provide an adequate number of employees to support its sourcing services and to ensure that its employees had the requisite skill and experience to perform in a reasonable manner. It also promised to provide production management services to La Senza, to develop alternative costing opportunities, and to evaluate new staffing structures to reduce La Senza's costs.

16.     Additionally, before Regent or any of its affiliates agreeing to purchase La Senza, L Brands assured Regent of MGF's ability to deliver on these improvements.

17.     However, MGF struggled to perform under the MSA. It lacked an adequate number of qualified employees with the necessary skill and experience to successfully source products to La Senza. This resulted in delivery delays, a failure to achieve anticipated cost reductions, and inadequate communications that could have allowed La Senza to anticipate and work-around MGF's failures.

18.     The mounting failures of MGF were documented in a written presentation made by La Senza to MGF in November 2019.

19.     MGF's failures contributed to La Senza's below-anticipated cashflow.

20.     While this was happening, MGF remained well aware of La Senza's financial position. From the time of the acquisition, La Senza regularly apprised MGF's senior

management (including MGF's COO, Senior Vice President of Finance and outside financial

advisor) of La Senza's financial condition.

21.    For example, on June 17, 2019, La Senza sent MGF's Vice President of Finance,

Daniel Bloch, its consolidated/constant currency balance sheet for Q1 2019.

22.    About a month later, La Senza informed Mr. Bloch that it was working on its Fall

2019 income statement and cash flow forecasts and that the financials were "lagging prior

estimates." It also explained that it was having difficulty securing financing to allow it to provide

the credit protection contemplated in the parties' MSA.

23.    On September 26, 2019, La Senza provided Mr. Bloch with its Q2 financials,

including its profit and loss statement and its balance sheet. A few days later, it supplemented

these financials with an updated cash flow forecast.

24.    Similarly, La Senza fully apprised MGF of the difficulty it was having in securing

the financing that it planned to use to obtain a letter of credit contemplated by the original MSA.

25.    Communications from La Senza to MGF concerning financial matters were not

limited to Mr. Bloch.  MGF's CEO and COO were also frequently included in communications,

meetings and written distributions.

26.    Despite these difficulties, MGF continued to accept new orders from La Senza

and delivered completed orders.

27.    As such, MGF's knowledge of La Senza's distressed financial condition—from

before the parties entered into the MSA and continuing through today—is objectively

demonstrable.

28.    On December 2, 2019, La Senza exercised its right to terminate the MSA.  La

Senza did so because MGF repeatedly failed to meet its obligations under the MSA, including

Case 20-10155-LSS   Doc 50-1   Filed 02/20/20   Page 21 of 35

failing to supply timely products and to assist in reducing costs, which could have been accomplished a number of ways and some of which were required by contract and some through the parties' course of dealing. Needless to say, MGF failed to live up to these obligations and representations.

29.    Three days after La Senza terminated the MSA, on December 5, 2019, MGF filed the instant action and alleged that La Senza had breached the MSA. MGF sought damages, injunctive relief, and reclamation of certain goods, and La Senza made a cash payment of $2.5 million on December 6, 2019, to resolve the reclamation demand.

30.    As the sourcing relationship between La Senza and MGF ended, La Senza contacted supplier factories directly. The MSA only limits La Senza's freedom to order from factories from which MGF directly sourced La Senza's products *after* the parties entered the MSA and, even then, only if La Senza did not have a pre-existing relationship with the factory. Only two of the supplier factories La Senza contacted meet these conditions, neither of which is material to these disputes.

31.    On December 4, 2019, MGF's counsel, Robert Ellis, sent a letter to Michael Reinstein, the Chairman of Regent, stating: "As you know, certain of MGF's factory relationships (e.g. Regina) have indicated that they do not have the ability to provide capacity to produce La Senza apparel beyond that which has already been allocated and on the originally scheduled timeframe. In addition, without a firm commitment such factories will reallocate their previously allocated production capacity to other customers and, as a result, La Senza will lose the opportunity to produce committed orders with those factories. Should La Senza wish to contact those factories directly to inquire about making a firm commitment regarding production capacity to produce apparel for La Senza, it is free to do so."

20

A-00020

32.     La Senza has attempted to negotiate a consensual resolution to its disputes with MGF.  However, MGF refused to agree that any statements made in negotiating the settlement would be inadmissible evidence in any potential litigation.

33.     Less than two weeks after MGF commenced the instant litigation in New York against La Senza, and despite the unambiguous New York forum selection clause in the MSA governing disputes between the parties, MGF commenced a second litigation in Delaware against La Senza, seeking, among other relief, the appointment of a receiver over La Senza (the "Delaware Chancery Court Action").  MGF did so, despite having no judgment against La Senza and in direct violation of the MSA's forum selection clause and notwithstanding the above-captioned pending litigation in New York.  On January 9, 2020, the Delaware Chancery Court granted La Senza's motion to dismiss the Delaware Chancery Court Action.

34.     Then, on January 24, 2020, MGF, Ocean Lanka (Pvt) Ltd ("Ocean") and Teejay Lanka plc ("Teejay") filed involuntary bankruptcy petitions against La Senza International, LLC, and La Senza International Canada, LLC, in the United States Bankruptcy Court for the District of Delaware in an attempt to force La Senza International, LLC, and La Senza International Canada, LLC into Chapter 7 bankruptcy cases (the "Delaware Involuntary Bankruptcy Cases"). On or about January 24, 2020, MGF also filed an Application for Bankruptcy Order  against La Senza Canada, LLC, in the Ontario Superior Court of Justice (the "Canadian Involuntary Bankruptcy Case").  The Delaware Involuntary Bankruptcy Cases and the Canadian Involuntary Bankruptcy Case are ongoing.

35.     Despite MGF's litigation and threats of litigation, La Senza has contacted MGF numerous times to discuss a resolution of the dispute and payment of amounts rightfully owing. For example, La Senza has made repeated attempts to negotiate both an interim and long-term

resolution of the parties' disputes, including an offer to make "interim payments" in exchange for a like release of goods. However, MGF flatly rejected the offer and instead demanded that La Senza provide MGF with liens on its assets.

36.     Similarly, on December 5, 2019, La Senza made a written settlement proposal to MGF. The proposal included an agreement to end the MSA and a schedule for full payment to MGF for all past due amounts claimed by MGF, as well as for payment of all current invoices, held goods, and "in-process orders." When offered the financial information in support of the proposal, MGF refused to even discuss such information.

37.     If MGF had accepted this proposal, La Senza would continue to receive an unimpeded flow of product, which would further generate cash to pay down MGF's claimed debt. MGF rejected a settlement proposal for full payment.

38.     MGF similarly rejected a proposal that MGF cancel (or even confirm the status of) any orders it had placed with supplier factories for La Senza's products that could still be canceled. Had MGF agreed to do so, La Senza could then directly place new orders, mitigating MGF's exposure to La Senza's alleged credit risk.

39.     MGF not only refused this suggestion but, on information and belief, has threatened supplier factories that they will be sued were they to agree to directly supply La Senza with such product.

40.     On information and belief, MGF has threatened Ocean and Teejay, two of MGF's supplier factories, to join in the involuntary bankruptcy petitions commencing the Delaware Involuntary Bankruptcy Cases, even though neither Ocean nor Teejay is a creditor of any of the Defendants, or has indemnified them against any losses arising therefrom.

Case 20-10155-LSS    Doc 50-1    Filed 02/20/20    Page 24 of 35

## COUNTERCLAIM I: BREACH OF CONTRACT

41.     La Senza restates and realleges the allegations in paragraphs 1 through 40 of its counterclaims as though fully set forth herein.

42.     The MSA between La Senza and MGF required MGF to "employ an adequate number of persons to provide the services contemplated [under the MSA]" and MGF further represented and promised in Section 11(e) that those employees would "have the requisite skills and experience to provide such services in a commercially reasonable manner."

43.     In Section 2(a) of the MSA, MGF promised to provide production management services for La Senza. The agreement provided that these services:

> *shall* include evaluating the existing sourcing matrix (factories, mill, trim and other raw material suppliers), developing alternative sourcing considerations, product costing and re-engineering, order management, color and pre-production fit approvals, fabric prepositioning and management, production scheduling and monitoring, factory compliance audits and management, importation, customs clearance and trade management, and delivery services (last mile and warehousing services included.)

(emphasis added.)

44.     In Section 2(e) of the MSA, MGF promised to undertake cost reduction measures, and to work to reduce existing costing.

45.     MGF failed to perform its obligations under the MSA.  For example, MGF failed to employ an adequate number of persons to provide services under the MSA, and it failed to employ workers with the requisite skill and experience to perform MGF's obligations under the MSA in a commercially reasonable manner, in breach of MSA Section 11(e).

46.     Moreover, MGF failed to ship product to La Senza in a timely manner. La Senza sells intimate apparel, the peak sales season for which is the time preceding Christmas and

A-00023

Valentine's Day. MGF's delays in delivering product coincided with La Senza's peak sales season, and as a result, they had a disproportionately negative impact on La Senza's business.

47.     Likewise, MGF failed to provide all or some of the production management services enumerated in Section 2(a) of the MSA, in breach of Section 2(a).

48.     Further, MGF failed to undertake cost reduction measures as required by Section 2(e) of the MSA, in breach of Section 2(e).

49.     MGF's numerous material breaches of the MSA critically impaired La Senza's cash flow and prevented it from performing its obligations under the MSA or contributed to La Senza's inability to perform them, including by preventing La Senza from making certain payments to MGF under the MSA in a timely manner.

50.     These failures, on MGF's part, were material breaches of the MSA, which damaged La Senza.

51.     By reason of the foregoing, La Senza is entitled to money damages in amounts to be proven at trial.

## COUNTERCLAIM II: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

52.     La Senza restates and realleges the allegations in paragraphs 1 through 51 of its counterclaims as though fully set forth herein.

53.     Regent's affiliate agreed to acquire La Senza after MGF provided various assurances that MGF would be able to assist La Senza by providing the sourcing and other support necessary to implement the Path to Profitability, to secure an approximately $15 million letter of credit, and to arrange for a $20 million corporate guaranty from L Brands in favor of MGF.

54. During the summer of 2019 when it became apparent that the Path to Profitability was little more than a pipedream used to sell off La Senza, MGF continued to source products for La Senza on credit, and La Senza continued to pay MGF for the goods received.

55. In the fall of 2019, however, MGF abruptly decided to attempt to force a liquidation of La Senza, all premised on the pretext invented by MGF that La Senza was "hopelessly" insolvent and often thinly-disguised in legal proceedings. In mid-November 2019, an MGF employee told La Senza that MGF's owners, Sycamore Partners, would rather litigate any issues with La Senza and potentially force a liquidation of La Senza, than continue to perform under the MSA.

56. On November 22, 2019, MGF issued a reclamation demand to La Senza. MGF plainly was attempting to choke off La Senza's sourcing and force a liquidation of La Senza. After La Senza's December 2, 2019 termination of the MSA, on December 5, 2019, MGF instituted this action in New York. MGF and La Senza negotiated a $2.5 million payment (which La Senza made on December 6, 2019) to resolve MGF's reclamation demand, and further agreed to the mutual contractual commitments to continue to negotiate in good faith. Yet, within a week, on December 13, 2019, MGF filed litigation against La Senza in Delaware, this time seeking the appointment of a receiver. The new lawsuit in Delaware is an unabashed demand for the liquidation of La Senza.

57. Since commencing the second lawsuit in Delaware, on information and belief, MGF has threatened supplier factories that they will be sued were they to agree to directly supply La Senza with such product. MGF continues to act to force a liquidation of La Senza.

58. The recent conduct of MGF is based on the false premise that La Senza was concealing its financial condition from MGF. However, before the parties entered into the MSA

A-00025

on January 5, 2019, MGF was aware of La Senza's financial condition and represented to La Senza that it would support La Senza as it pursued the Path to Profitability.

59.     Indeed, during 2019, in accordance with La Senza's obligations under the MSA, La Senza provided MGF with information about La Senza's financial condition. Moreover, in addition to disclosures required under the MSA, La Senza regularly updated MGF's senior management team about La Senza's efforts and challenges in arranging the credit protection for MGF, including certain related financial difficulties La Senza faced. MGF was aware of La Senza's financial condition, and into the Fall of 2019, continued to represent to La Senza that it would support La Senza as it pursued the Path to Profitability.

60.     Thus, recent conduct of MGF constitutes an abandonment of a settled course of dealings under the MSA, which has been replaced with the aggressive pursuit of the liquidation of La Senza.

61.     MGF's actions breached the implied covenant of good faith and fair dealing, injuring La Senza.

62.     By reason of the foregoing, La Senza is entitled to money damages in amounts to be proven at trial.

## **COUNTERCLAIM III: BREACH OF FORUM SELECTION CLAUSE**

63.     La Senza restates and realleges the allegations in paragraphs 1 through 62 of its counterclaims as though fully set forth herein.

64.     The MSA contained a forum selection clause, which provides in pertinent part: "The parties consent to the exclusive jurisdiction and venue of the courts of proper jurisdiction located in the City of New York, New York County, New York, USA for all purposed related to this Agreement or any contract entered into hereunder."

65.     MGF was aware of the forum selection clause, as it filed the above-captioned pending litigation in New York even though neither party is incorporated in or has its principal place of business in New York.

66.     However, on December 13, 2019, MGF filed Delaware Chancery Court Action against La Senza in the Chancery Court of Delaware, seeking, among other relief, the appointment of a receiver over La Senza.

67.     On January 9, 2020, the Delaware court granted La Senza's motion to dismiss this action, in part, because the forum selection clause was enforceable. Thus, the matter was not properly before that court.

68.     Then, on January 24, 2020, MGF filed another lawsuit against La Senza outside of New York City, namely involuntary bankruptcy petitions commencing the Delaware Involuntary Bankruptcy Cases in the United States Bankruptcy Court for the District of Delaware.

69.     MGF has twice breached the MSA's enforceable forum selection clause.

70.     La Senza has incurred, and continues to incur, damages as a result of MGF's breach of the forum selection clause. Specifically, La Senza has incurred, and continues to incur, attorneys' fees and other expenses in being required to enforce the forum selection clause in other venues.

71.     By reason of the foregoing, La Senza is entitled to money damages in amounts to be proven at trial.

## COUNTERCLAIM IV: BREACH OF CONTRACT REGARDING PATTERNS

72.     La Senza restates and realleges the allegations in paragraphs 1 through 71 of its counterclaims as though fully set forth herein.

73.     For the purpose of these Counterclaims, the "Patterns" shall mean:

all (i) digital patterns that represent all final fit approvals, and (ii) paper patterns, that represent all final fit approvals, developed, licensed, used or marketed at any time by La Senza, which paper patterns shall include, without limitation, patterns for the following special categories:
  a.  Core Bras
  b.  Panty Blocks
  c.  No Show Panties
  d.  Casual Sleep/Gifting Packaged pajama sets
  e.  Sexy Sleep Blocks.

74.     La Senza acquired the Patterns from L Brands pursuant to the Asset Purchase Agreement dated December 12, 2018 between L Brands and La Senza.  On or about the closing date for the agreement contemplated by such Asset Purchase Agreement, and to permit MGF to meet its obligations to La Senza under the MSA, L Brands transmitted the digital and physical possession of the Patterns to MGF on behalf of La Senza.  Further, as between La Senza and MGF, Section 18(a) of the MSA makes clear that La Senza at all times has retained ownership of and all rights in and to the Patterns.

75.     After terminating the MSA on December 2, 2019, La Senza demanded that MGF return the Patterns to La Senza by returning directly to La Senza all paper Patterns and any digital copies thereof.  When MGF failed to respond or return the Patterns, on December 24, 2019, counsel for La Senza made a written demand upon counsel for MGF to return all digital and paper Patterns.

76.     MGF has failed to return exclusive control of the Patterns to La Senza.  MGF thereby breached Section 18(a) of the MSA.

77.     MGF's material breaches of the MSA by failing to return exclusive control of the Patterns to La Senza is impairing La Senza's ability to place orders and has caused harm to La Senza.

A-00028

Case 20-10155-LSS Doc 50-1 Filed 02/20/20 Page 30 of 35

78.     By reason of the foregoing, La Senza is entitled to money damages in amounts to be proven at trial, and the return of the Patterns.

### COUNTERCLAIM V: RECOVERY OF CHATTEL/REPLEVIN OF PATTERNS

79.     La Senza restates and realleges the allegations in paragraphs 1 through 78 of its counterclaims as though fully set forth herein.

80.     La Senza obtained a possessory right to the above-described Patterns from L Brands pursuant to their Asset Purchase Agreement.

81.     Presently, MGF is in possession of both digital and paper copies of La Senza's Patterns.

82.     La Senza transmitted the Patterns to MGF only so that MGF could then provide the Patterns to the manufacturers of La Senza's goods for the sole purpose of facilitating such manufacturing. La Senza did not transfer its ownership interest in the Patterns to MGF. Rather, MGF received the Patterns as a bailment.

83.     La Senza's possessory right to the Patterns is therefore superior to that of MGF.

84.     As the rightful owner of the Patterns, La Senza has the right to terminate MGF's possession of the Pattern copies immediately.

85.     La Senza has repeatedly demanded that MGF return exclusive control of the Patterns, but MGF has continued to withhold La Senza's chattel.

86.     The Patterns rightfully and lawfully belong to La Senza. MGF's continued misappropriation of La Senza's Patterns has been through improper means.

87.     MGF's continued possession of the Patterns is inconsistent with and in denial of La Senza's superior right to exclusive possession of its chattel.

Case 20-10155-LSS    Doc 50-1    Filed 02/20/20    Page 31 of 35

88.     By reason of the foregoing, La Senza seeks immediate return of the Patterns pursuant to CPLR 7101.

## COUNTERCLAIM VI: CONVERSION OF PATTERNS

89.     La Senza restates and realleges the allegations in paragraphs 1 through 88 of its counterclaims as though fully set forth herein.

90.     La Senza obtained ownership of the above-described Patterns prior to transferring the Patterns to MGF, which transfer to MGF was for the sole purpose of facilitating manufacturing arranged by MGF.

91.     MGF has refused to return the copies of the Patterns in its possession, and this refusal has infringed upon La Senza's right to exclusive control of the Patterns.

92.     MGF's continued possession of the Patterns has caused damage to La Senza.

93.     If MGF is unable to return exclusive control of the Patterns pursuant to the Count V replevin claim, La Senza is alternatively entitled to money damages in amounts to be proven at trial.

## COUNTERCLAIM VII: TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS

94.     La Senza restates and realleges the allegations in paragraphs 1 through 93 of its counterclaims as though fully set forth herein.

95.     Prior to mid-November 2019, MGF appeared to La Senza to be engaging in commercially reasonable discussions with La Senza about the MSA.  However, this changed abruptly in mid-November 2019, when MGF told La Senza that MGF's owners, Sycamore Partners, would rather litigate any issues with La Senza and force a liquidation of La Senza, than continue to perform under the MSA.

Case 20-10155-LSS   Doc 50-1   Filed 02/20/20   Page 32 of 35

96.     On November 22, 2019, MGF made its reclamation demand upon La Senza, and when La Senza initially was unable to resolve matters with MGF, on December 2, 2019, La Senza terminated the MSA with MGF.  Without the MSA, La Senza needed arrangements for appropriate sourcing.

97.     On December 4, 2019, MGF's counsel, Robert Ellis, sent a letter to Michael Reinstein, the Chairman of La Senza and the Chairman of Regent stating "As you know, certain of MGF's factory relationships (e.g. Regina) have indicated that they do not have the ability to provide capacity to produce La Senza apparel beyond that which has already been allocated and on the originally scheduled timeframe. In addition, without a firm commitment such factories will reallocate their previously allocated production capacity to other customers and, as a result, La Senza will lose the opportunity to produce committed orders with those factories.  Should La Senza wish to contact those factories directly to inquire about making a firm commitment regarding production capacity to produce apparel for La Senza, it is free to do so."

98.     La Senza contacted many of these factories to arrange for appropriate sourcing.

99.     On December 5, 2019, MGF commenced the instant lawsuit.

100.    On December 6, 2019, upon receiving $2.5 million from La Senza, MGF agreed with La Senza to the mutual contractual commitments to continue to negotiate in good faith.

101.    Within a week, on December 13, 2019, and despite the unambiguous New York forum selection clause in the MSA governing any dispute between the parties, MGF filed litigation against La Senza in Delaware, this time seeking the appointment of a receiver.

102.    Since commencing the second lawsuit in Delaware, upon information and belief, MGF has threatened supplier factories that they will be sued were they to agree to directly supply La Senza with such product.

A-00031

103. MGF knows the factories that supply product for La Senza. Indeed, MGF procured the supply arrangements with those factories – although, with only a few immaterial exceptions, each of these factories have a historical business relationship with La Senza that pre-dates MGF's involvement. In other words, MGF "took over" – and is now threatening – a supply chain that La Senza itself developed and nurtured over the past several years.

104. MGF knows that in the near term the only viable sources of supply for La Senza products are the factories that are currently manufacturing such products.

105. MGF knows that the most likely means of mitigating any losses MGF may incur as the result of having procured the supply arrangements with those factories is to permit La Senza to make supply arrangements with those factories directly. In fact, MGF encouraged La Senza to contact those factories directly to make such arrangements – and nothing in the MSA prevented La Senza from doing so. In short, MGF knew of La Senza's historical and prospective economic relations with the factories, as well as with the input and material suppliers to the factories.

106. Despite MGF's knowledge of La Senza's historical and prospective economic relations with the factories, MGF is further interfering with La Senza's prospective economic relations with the factories by prosecuting a second lawsuit (in Delaware) against La Senza seeking the appointment of a receiver to liquidate La Senza – despite the unambiguous New York forum selection clause in the MSA governing any dispute between the parties; by announcing their intent to litigate any issues with La Senza and force a liquidation of La Senza, rather than continue to perform under the MSA; and, upon information and belief, by threatening the input and material suppliers to the factories that they will be sued were they to agree to directly supply La Senza with product.

A-00032

107.    MGF's conduct in prosecuting a second lawsuit, announcing a scorched-earth litigation campaign and threatening to bring litigation against third parties that would do business with La Senza, which threats are intended to undermine La Senza, is intentional.

108.    MGF's conduct in prosecuting a second lawsuit, announcing a scorched-earth litigation campaign and threatening to bring litigation against third parties that would do business with La Senza, which threats are intended to undermine La Senza, is wrongful and tortious.

109.    But for MGF's conduct in prosecuting a second lawsuit, announcing a scorched-earth litigation campaign and threatening to bring litigation against third parties that would do business with La Senza, which threats are intended to undermine La Senza, La Senza would enter into supply arrangements with the factories and/or other suppliers.

110.    MGF used the wrongful means described above for the sole purpose of harming La Senza. MGF was successful in causing harm to La Senza.

111.    MGF does not have any privilege to engage in the wrongful means described above.

112.    By reason of the foregoing, La Senza is entitled to money damages in amounts to be proven at trial.

WHEREFORE, defendant/counterclaim-plaintiffs, La Senza International, LLC, La Senza International Canada, LLC, and La Senza Canada, Inc. respectfully demand judgment over and against plaintiff/counter-defendant, MGF Sourcing US, LLC on the first, second, third, fourth, sixth and seventh counterclaims for money damages in amounts to be proven at trial with interest thereon from and after a date no later than November 22, 2019, and on the fifth counterclaims for the return of the Patterns, and for such other and further relief that as to this Court may seem just and proper.

A-00033

Dated:    February 18, 2020
              Cleveland, Ohio

**HAHN LOESER & PARKS LLP**

*/s/ Daniel A. DeMarco*

Daniel A. DeMarco (Admitted Pro Hac Vice)
Lawrence E. Oscar (Admitted Pro Hac Vice)
Jacqueline A. Meese-Martinez
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Phone:    (216) 621-0150
Fax:      (216) 241-2824
Email:    leoscar@hahnlaw.com
          dademarco@hahnlaw.com
          jmeese-martinez@hahnlaw.com

-and-

Timothy J. Pastore
SAUL EWING ARNSTEIN & LEHR LLP
1270 Avenue of the Americas
Suite 2005
New York, NY 10020
Phone: (212) 980-7204
Email: Timothy.pastore@saul.com

*Co-counsel for Defendants/Counterclaim
Plaintiffs La Senza International, LLC, La
Senza International Canada, LLC, and La Senza
Canada, Inc.*

34

A-00034